UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

VERONICA BARRERA,

                Plaintiff,

v.                                     Case No. 15-CV-916-pp

NANCY BERRYHILL,[1]

                Defendant.

---

**ORDER AFFIRMING THE FINAL ADMINISTRATIVE DECISION
OF THE COMMISSIONER**

---

## I.    INTRODUCTION

Plaintiff Veronica Barrera seeks judicial review of a final decision of defendant Nancy Berryhill, the Acting Commissioner of Social Security, who found that she was not "disabled" within the meaning of the Social Security Act. The Social Security Administration's Appeals Council denied review, making the administrative law judge's (ALJ's) decision the final decision of the Commissioner.

The plaintiff contends that the ALJ's decision should be reversed because (1) it is not supported by substantial evidence; (2) the ALJ erred by affording little weight to certain opinions offered by one of the plaintiff's treating physicians; and (3) the ALJ incorrectly found that that the plaintiff's testimony

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security as of January 23, 2017. Accordingly, the court has amended the caption to substitute Ms. Berryhill as the defendant in this action.

was not entirely credible as to the intensity, persistence, and limiting effects of her impairments. The plaintiff asserts that this court should reverse the Commissioner's decision and award her benefits, or remand the case to the ALJ for further proceedings. For the reasons stated below, the court affirms the Commissioner's decision.

## II.   STANDARD OF REVIEW

### A.   Judicial Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision constitutes the final decision of the Commissioner. Moore v. Colvin, 743 F.3d 1118, 1120 (7th Cir. 2014). Judicial review of an ALJ's decision under §405(g) is limited; the district court will reverse only if the ALJ's decision is not supported by substantial evidence, is based on legal error, or is so poorly articulated as to prevent meaningful review. Hopgood ex rel. L.G. v. Astrue, 578 F.3d 696, 698 (7th Cir. 2009). "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." Id. (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). If conflicting evidence in the record would allow reasonable minds to disagree about whether the claimant is disabled, the district court must affirm the ALJ's decision to deny the application for benefits. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008).

The district court must review the entire record, including the evidence that supports the ALJ's conclusions as well as evidence that detracts from the ALJ's conclusions, but it may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." Id. "While judicial review is deferential, it is not abject . . . ." Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010). The court will not affirm "an administrative decision that fails to mention highly pertinent evidence, or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." Id. (internal citations omitted). In sum, the district court will uphold a decision so long as the record reasonably supports it and the ALJ explains his analysis of the evidence with enough detail and clarity to permit meaningful review. Eichstadt v. Astrue, 534 F.3d 663, 665-66 (7th Cir. 2008).

B.     Disability Determination

The Social Security Administration provides "disability insurance benefits and supplemental security income to persons who have a 'disability.'" Barnhart v. Thomas, 540 U.S. 20, 22 (2003) (citing 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B)). To qualify as "disabled," the claimant must demonstrate a "physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at 21-22. The Social Security Act further

defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

Id. at 23.

In evaluating a claim for disability benefits, the ALJ follows a five-step, sequential process, asking:

(1)     Has the claimant engaged in substantial gainful activity since her alleged onset of disability?

(2)     If not, does she suffer from a severe, medically determinable impairment?

(3)     If so, does that impairment meet or equal any impairment listed in SSA regulations as presumptively disabling?

(4)     If not, does she retain the residual functional capacity ("RFC") to perform her past work?

(5)     If not, can she perform other jobs existing in significant numbers?

E.g., Villano v. Astrue, 556 F.3d 558, 561 (7th Cir. 2009). If it appears at any step that the claimant is not disabled, the analysis ends. 20 C.F.R. §404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

## III.   DISCUSSION

### A.   The ALJ's Decision

The ALJ issued her decision on February 21, 2014. Dkt. No. 11-3, at 14. At step one of the five-step sequential analysis, the ALJ found that the plaintiff

had not engaged in substantial gainful activity since the plaintiff's alleged disability onset date--March 31, 2011. Id. at 16. At step two, she found that the plaintiff had the following severe impairments: "obesity; fibromyalgia; diabetes mellitus; shoulder bursitis/tendonitis; obstructive sleep apnea; polyarthalgias; depression and anxiety." Id. at 17 (citing 20 C.F.R. §§404.1520(c) and 416.920(c)).

### 1. The ALJ Determined That The Plaintiff Was Not Disabled Because Her Impairments Were Not Sufficiently Severe

At step three, the ALJ concluded that the plaintiff was not disabled because she did not have an impairment or combination of impairments that met the listed requirements in 20 C.F.R. §404, Subpart P, Appendix 1. Id. The ALJ based this conclusion on her review of the medical evidence and the plaintiff's hearing testimony, and determined that the plaintiff's severe impairments did not meet the criteria of any listed impairment individually or in combination. Id. The ALJ determined that the medical evidence did not show that the plaintiff's impairments rose to listing level severity, and found that no medical source had made such a finding.

The plaintiff's therapist, Dr. David Meyers, stated that the plaintiff had marked difficulties in maintaining social functioning and maintaining concentration, persistence or pace. The ALJ found that these mental impairments resulted in mild to moderate difficulties, they did not meet or medically equal the criteria of listings 12.04 or 12.06. Id. Specifically, the ALJ found that the plaintiff had mild restrictions in activities of daily living resulting from her physical symptoms, but was independent in the

performance of tending to her personal needs, preparing meals, cleaning, doing laundry, shopping and managing her finances. Id. at 18. The ALJ also found that the plaintiff had mild difficulties in social functioning, but had been able to navigate her personal relationships and family matters. Id. The ALJ found that, depending on the situation, the plaintiff occasionally had moderate limitations with regard to concentration, persistence, or pace resulting from her mental health symptoms. Id. Nonetheless, the plaintiff "reported that she finishes what she starts and her treatment records continually observed that her thought processes were not impaired." Id. Finally, the ALJ noted that the plaintiff's health history included no episodes of decompensation.

### 2. The ALJ Determined That The Plaintiff Had The Residual Functional Capacity To Perform Sedentary Work

Having found that the plaintiff was not disabled, the ALJ proceeded to the two-step process in assessing the plaintiff's residual functional capacity. First, the ALJ evaluated whether the plaintiff had an underlying medically determinable physical or mental impairment that reasonably could be expected to produce her pain or symptoms. Id. at 19. Second, the ALJ evaluated the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limited her functioning. Id.

In June 2011, the plaintiff alleged that she was disabled as a result of her arthritis, which had worsened since that time and affected her activities of daily living and her ability to care for her personal needs. Id. She has had surgery on her two big toes and has pins and plates in her ankles. Id. She testified that she had pain in her head, neck, shoulders, elbows, fingers, lower

back, spine, knees, thighs, ankles, feet, and toes, which she treated with multiple medications and a cortisone shot every three months in her thighs and knees. Id. The plaintiff testified that side effects from her medications blurred her vision and made her sleepy, dizzy, and fatigued, so she rested a lot throughout the day, alternating between lying down, sitting, sewing by hand, or doing household chores such as mending clothes, dusting, mopping, and washing dishes. The plaintiff testified that she constantly needed to take breaks when performing those chores. Id. at 20.

The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible . . . ." Id. The ALJ determined that the medical evidence (including treatment records and diagnostic test results) reflected mild to moderate findings with respect to the plaintiff's fibromyalgia, right knee arthritis, diabetes, shoulder bursitis/tendonitis, sleep apnea, and polyarthalgias. The ALJ concluded that the evidence did not support the high degree of limitation that the plaintiff claimed to suffer from these conditions. Further, the ALJ found that the plaintiff's medical records showed that treatment "has been generally successful in helping to alleviate" her symptoms. Id. at 21. The ALJ found that the plaintiff's obesity was a severe impairment which could cause limitations in itself, and that, when combined with other impairments, the effects of all of the plaintiff's limitations might be

greater than if obesity were not present. Id. For that reason, the ALJ considered the impact of the plaintiff's weight on the plaintiff's medical conditions.

The ALJ next determined that the state agency medical consultants' opinions, which initially assessed the plaintiff as able to perform work at the medium exertional level and then reduced her capability to the light exertional level, were entitled to little weight. Id. According to the ALJ, the state agency consultants' opinions were consistent with the objective medical evidence, but they did not take into account the plaintiff's subjective complaints regarding the side effects of her medications. Id.

The ALJ found that the plaintiff had the residual functional capacity to work at the sedentary exertional level, with the ability to alternate between sitting and standing; with no climbing, balancing, or working at heights or hazards; and with only occasional stooping and crouching. Id. The ALJ stated that this RFC determination was consistent with the rheumatology examinations in the record, and took into account the side effects of her medications, her joint and muscular conditions, and her obesity. Id.

The ALJ then evaluated the effect of the plaintiff's psychological symptoms. After reviewing the medical evidence, the ALJ concluded that the plaintiff's mental impairments were not seriously debilitating and not as severe as the plaintiff reported. Id. at 22. The ALJ explained that the plaintiff's mental impairments were exacerbated by situational stressors, such as family issues and relationship problems. The plaintiff did not often report that her thought process or content were impaired, but when she did report such difficulties,

her medications were adjusted. Id. The ALJ further found that, despite her depression and anxiety, the plaintiff maintained a somewhat normal level of daily activity and interaction. She was independent in preparing meals, doing laundry, dusting, and managing her finances, though she had some physical difficulties with these tasks. Id. Based on evidence that the plaintiff maintained a normal level of daily activity and interaction, the ALJ gave little weight to the opinion offered by the plaintiff's therapist, Dr. Meyers, that the plaintiff "would be absent more than four days per month, require three unscheduled breaks for 10 minutes each and be off-task 30 percent of an eight-hour workday." Id. at 23. The ALJ determined that Dr. Meyers' opinions "appear to rely quite heavily on the subjective report of symptoms and limitations provided by the [plaintiff], and seemed to uncritically accept as true most, if not all, of what the claimant reported since the record does not support his opinion." Id.

In contrast, the ALJ gave great weight to Dr. Meyers' opinions that the plaintiff would have (a) no limitations in her ability to understand, remember and carry out simple instructions; (b) mild limitations in her ability to interact with the public; and (c) moderate limitations in her ability to maintain attention and concentration for simple, routine and repetitive tasks and in her ability to interact appropriately with supervisors and co-workers in work situations. The ALJ found those opinions were supported by the plaintiff's statement and the medical evidence. Id. For the same reason, the ALJ gave great weight to the state agency psychological consultant's opinion that the plaintiff would have

moderate limitations with detailed instructions and maintaining attention and concentration for extended periods. Id.

The ALJ found that the plaintiff's RFC allows her to perform simple, routine, repetitive, non-complex work with a specific vocational preparation rating of one or two, consistent with unskilled work. Id. The ALJ then explained her determination that the plaintiff's testimony as to her degree of symptoms and limitations was not entirely credible. First, the ALJ noted that the plaintiff's work history showed that she worked only sporadically prior to her alleged disability onset date, and she stopped working due to a business-related layoff, not because of her allegedly disabling impairments. Id. at 24. The ALJ questioned whether the reason for the plaintiff's continuing unemployment was, in fact, her impairments or something else. The ALJ found that the plaintiff's responses at the hearing "were evasive or vague and left the impression that" the plaintiff had not been fully candid with the ALJ. Id. The ALJ also noted that the plaintiff had received unemployment benefits for two to three years after she stopped working, "indicating an ability to work inconsistent with the [plaintiff's] allegations." Id.

In sum, the ALJ found that the medical evidence and the plaintiff's testimony did not support all of her allegations of limitations.

B.    The ALJ's Decision Is Supported By Substantial Evidence

The plaintiff contends generally that the ALJ's decision that the plaintiff was not disabled is not supported by substantial evidence. The plaintiff's argument has two subparts, which the court discusses individually. The

10

plaintiff argues that (1) the ALJ erred by giving certain portions of the plaintiff's treating physician's treating source statement great weight, but giving other portions no weight; and (2) the ALJ failed to properly evaluate the plaintiff's credibility.

### 1. The ALJ Sufficiently Explained Her Determination that Certain of Dr. Meyers' Opinions Were Entitled to Great Weight While Other Opinions Were Entitled to Little Weight

Dr. Meyers was the plaintiff's treating therapist, and submitted a treating source statement expressing several opinions regarding the plaintiff's limitations and ability to work. The ALJ is required to consider a number of factors in weighing a treating doctor's opinion. 20 C.F.R. §404.1527(c)(2) governs the weighing of treating source opinions:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

The opinions of treating doctors are not always entitled to controlling weight. The ALJ must weigh the medical evidence, applying the factors set forth in §404.1527, and must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010) (citing §404.1527). If an ALJ declines to give controlling weight to a treating physician's opinion, she must determine what weight to assign it by considering "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010); see also 20 C.F.R. §404.1527(c)(2). The Seventh Circuit repeatedly has criticized decisions that "said nothing regarding this required checklist of factors." Larson, 615 F.3d at 751; Campbell, 627 F.3d at 308. While the ALJ is not required to mention every piece of evidence, "[s]he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." Godbey v. Apfel, 238 F.3d 803, 808 (7th Cir. 2000).

The plaintiff argues that the ALJ manipulated the plaintiff's hearing testimony, and cherry-picked certain portions of Dr. Meyers' treating source statement to justify her denial of disability benefits. According to the plaintiff, the ALJ gave great weight to the portions of Dr. Meyers' statement that supported the ALJ's decision that the plaintiff was not disabled, and

disregarded the portions of his statement that conflicted with her disability determination. In support of her argument, the plaintiff points to the ALJ's decision to give little weight to Dr. Meyers' opinions regarding absenteeism, unscheduled breaks, and going off task, alleging that the ALJ's decision was based on "unfounded speculation." Dkt. No. 16, at 8. The plaintiff similarly contends that the ALJ erred by using out-of-context snippets of her hearing testimony as the basis for the ALJ's determination that the plaintiff's activities of daily living and social interaction undermined Dr. Meyers' opinion of the plaintiff's limitations.

The ALJ evaluated Dr. Meyers' treating source statement at length in her decision. Dr. Meyers' statement contained various opinions regarding the plaintiff's limitations, certain of which the ALJ found to be supported by the record and others not. The ALJ rejected Dr. Meyers' opinions regarding absenteeism, because she found that the plaintiff's symptoms were exacerbated by relationship difficulties, not her physical limitations. The ALJ reasoned that Dr. Meyers' opinion was based on the symptoms subjectively reported by the plaintiff, not the objective medical evidence, and she concluded that the record did not support Dr. Meyers' opinion.

In contrast, the ALJ found that the record supported Dr. Meyers' opinions that (1) the plaintiff would have no limitations in her ability to understand, remember and carry out simple instructions; (2) mild limitations in her ability to interact with the public; and (3) moderate limitations in her ability to maintain attention and concentration for simple, routine and

repetitive tasks and in her ability to interact appropriately with supervisors and co-workers in work situations. The ALJ determined that those opinions were supported by the plaintiff's treating physician's statement and the medical evidence.

The ALJ considered Dr. Meyers' opinion in evaluating the severity of the plaintiff's mental health symptoms. Dkt. No. 11-3 at 22-23. The ALJ found that, despite the plaintiff's depression and anxiety, she engaged in a "somewhat normal level of daily activity and interaction," albeit with "reported difficulties of only a physical nature." Id. at 22. The ALJ considered the range of the plaintiff's activities of daily living (laundry, dusting, managing finances, mending clothes, attending family gatherings when she had transportation), and determined that the plaintiff's ability to participate in those activities undermined the credibility of her allegations regarding her ability to focus and concentrate and the severity of her mental health symptoms. Id.

The plaintiff argues that, when assigning portions of Dr. Meyers' opinion little weight, the ALJ disregarded aspects of the plaintiff's testimony, as well as progress notes from her treating psychiatrist, Dr. Ahmad Khan, regarding her limitations and difficulties. The court disagrees. The ALJ evaluated the plaintiff's activities of daily living in connection with determining the severity of her mental health symptoms. The ALJ expressly recognized that the plaintiff had physical limitations that interfered with her ability to do household work and attend family gatherings. She found, however, that the fact that the plaintiff could engage in those activities undermined both her own allegations

14

as to the severity of her mental health symptoms and Dr. Meyers' opinions as to the plaintiff's absenteeism, her need to take unscheduled breaks, and the amount of time the plaintiff could be expected to be off task. Id. It is proper for the ALJ to consider the plaintiff's activities of daily living as a factor when considering the limiting effects of symptoms and conditions. Loveless v. Colvin, 810 F.3d 502, 508 (7th Cir. 2016); see also 20 C.F.R. §404.1529(c)(3)(i). Further, the ALJ referenced Dr. Khan's contemporaneous progress notes when analyzing Dr. Meyers' opinions, ultimately concluding that Dr. Khan's progress notes did not support Dr. Meyers' opinions as to the plaintiff's alleged disability. Dkt. No. 16-3 at 22-23.

This court's function is not to reweigh the evidence evaluated by the ALJ and replace it with the court's own judgment. Shideler v. Astrue, 688 F.3d 306, 310-11 (7th Cir. 2012). The court finds that the ALJ satisfied her obligation to "minimally articulate" the reasons she discounted portions of Dr. Meyers' opinions and found that the contrary evidence did not persuade her that the plaintiff's symptoms and limitations were not as severe as she alleged. Berger v. Astrue, 516 F.3d 539, 544 (7th Cir. 2008).

>    2.    *The ALJ's Credibility Determination Was Not Patently Wrong.*

The plaintiff argues that the ALJ failed to comply with SSR 96-7p in finding her testimony "not entirely credible." Dkt. No. 16 at 14. After the parties filed their briefs, the Social Security Administration rescinded SSR 96-7p and replaced it with SSR 16-3p. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3 eliminates the use of the term "credibility" and clarifies "that

subjective symptom evaluation is not an examination of an individual's character." Id. at *1. It otherwise adheres to the same two-step symptom evaluation process used by the ALJ under SSR 96-7p to evaluate the plaintiff's description of her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." Id. at *2. If there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." Id. In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons." Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009). An ALJ's credibility finding is entitled to great deference and a district court will reverse an ALJ's assessment of a claimant's subjective complaints only if "patently wrong." Jones v. Astrue, 623 F.3d 1155, 1162 (7th Cir. 2010); See Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008).

The ALJ used language in her decision that the Seventh Circuit often has criticized as "meaningless boilerplate." E.g., Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010)). The use of such boilerplate language alone, however, does not provide a basis for remanding the case, as long as "the ALJ said more" and explained her reasons for discounting the credibility of plaintiff's statements as to the severity and limiting effects of her symptoms. Jackson v. Colvin, No. 12-

C-1324, 2013 WL 1499010, at *5 (N.D. Ill. April 11, 2013) (citing Richison v. Astrue, 462 F. App'x 622, 625 (7th Cir. 2012)). See also Loveless v. Colvin, 810 F.3d 502, 508 (7th Cir. 2016) ("[T]he use of boilerplate is not a ground to remand if the ALJ justified his credibility assessment based on the evidence.").

The ALJ went well beyond the so-called "boilerplate," and explained the reasons why she found the plaintiff's stated symptoms inconsistent with the evidence. She explained that: (1) the medical records conflicted with the plaintiff's statements about the severity of her physical and psychological symptoms; (2) the objective diagnostic testing results were relatively mild; (3) the plaintiff's mental health treatment had not been aggressive and generally had been successful in alleviating her symptoms; (4) the plaintiff received unemployment benefits two to three years after she alleged that she became disabled, which was inconsistent with the plaintiff's alleged disability; (5) there was conflicting evidence in the record as to whether the plaintiff was let go from a previous job due to her limitations or due to her employer's economic condition; and (6) the plaintiff had sporadic work history predating her alleged disability. Dkt. No. 11-3 at 20-23.

The court finds no error with respect to this portion of the ALJ's analysis, or with the evidence that the ALJ considered in assessing the plaintiff's credibility. SSR 16-3 (like SSR 96-7p before it) requires the ALJ to "consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." SSR 16-3, 2016 WL 1119029 at *4. "[I]f the

frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . , we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3, 2016 WL 1119029 at *8. A plaintiff's work history is one factor the ALJ can consider, though it is not dispositive. Shumaker v. Astrue, 632 F. App'x 861, 867 (7th Cir. 2015).

In her brief, the plaintiff contends that there is no logical bridge between the evidence and the ALJ's conclusion that the plaintiff was not entirely credible. Dkt. No. 16 at 16. She disagrees with the ALJ's characterization of her testimony as vague and evasive and, in essence, urges the court to give the plaintiff's testimony more credit than the ALJ gave it. Id. The court is satisfied that the ALJ appropriately weighed the evidence—both the plaintiff's testimony and the plaintiff's medical records—and discounted the plaintiff's credibility as to the severity of her symptoms and limitations for reasons that are supported by the record. See Shideler, 688 F.3d at 312 (noting that an ALJ's credibility determination does not need to be perfect to survive judicial review). The court will not reweigh the evidence, or substitute its judgment of the plaintiff's credibility for the ALJ's.

IV.     **CONCLUSION**

The court **ORDERS** that that the final administrative decision of Nancy Berryhill, Acting Commissioner of Social Security, denying the plaintiff's application for disability benefits, is **AFFIRMED**. The court will enter judgment accordingly.

Dated in Milwaukee, Wisconsin, this 21st day of February, 2017.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge